NO. 07-06-0088-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

NOVEMBER 29, 2006
_____

IN THE INTEREST OF J.C.B.
_____

FROM THE 31st DISTRICT COURT OF LIPSCOMB COUNTY;

NO. 04-10-3857; HON. PHIL N. VANDERPOOL, PRESIDING
_____

***OPINION***
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Richard Phillip Beats appeals from an order terminating his parental relationship with his child, J.C.B. The sole issue before us concerns the trial court's subject matter jurisdiction to order termination. He argues that it had no such authority given that the home state of J.C.B. lay outside of Texas. Nor did statute investing Texas courts with authority to assume "temporary emergency jurisdiction" over children threatened with mistreatment or abuse fill the void. We disagree and overrule the contention.[1]

*Applicable Law*

Whether a trial court has subject matter jurisdiction over a particular dispute is a question of law. *Texas Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.

---

[1]The rights of the child's mother Kimberly Kay Beats were also terminated, but she has not filed an appeal.

2004). So, we can review its decision on the issue *de novo*. *Dean Food Co. v. Anderson,* 178 S.W.3d 449, 452 (Tex. App.–Amarillo 2005, pet. denied). We further note that the burden lies with the party initiating suit to establish the existence of such jurisdiction. *City of Lubbock v. Rule,* 68 S.W.3d 853, 856 (Tex. App.–Amarillo 2002, no pet.). This burden is satisfied through allegations contained in the plaintiff's petition or the presentation of evidence illustrating the existence of the jurisdictional prerequisites. *See In re Oates*, 104 S.W.3d 571, 575-76 (Tex. App.–El Paso 2003, no pet.) (discussing the petitioner's burden to allege facts illustrating the existence of jurisdiction and the trial court's obligation to consider evidence when necessary to resolve the dispute).

Next, statute provides that a Texas court may make an initial custody determination regarding a child if 1) the child's "home state" is Texas, 2) the child's "home state" was Texas within six months prior to the commencement of the proceeding if the child is absent from Texas but a parent continued to live here, 3) the child has no "home state" or the courts of the child's "home state" declined to exercise jurisdiction over the child because Texas was the more appropriate forum, 4) all courts potentially having jurisdiction over the child declined to exercise it because Texas is the more appropriate forum, and 5) no court of any other state would have jurisdiction over the child. TEX. FAM. CODE ANN. §152.201(a)(1)-(4) (Vernon 2002). As can be seen, and save for one exception, much is dependent upon the child's home state, that being the state in which the child lived with a parent or person acting as a parent for at least six months immediately before commencement of the child custody proceeding. *Id.* §152.102(7); *In re Barnes*, 127 S.W.3d 843, 847 (Tex. App.–San Antonio 2003, no pet.). In short, if the child has a home

2

state, if it is one other than Texas, and if the courts of that state have not declined to exercise their jurisdiction, then the courts of Texas lack jurisdiction over the child.

Next, the exception alluded to above does permit courts of this state to act in emergency situations. To fall within that ambit, the situation must be one wherein the child was abandoned or where court intervention is "necessary in an emergency" to protect a child subjected to or threatened with mistreatment or abuse. TEX. FAM. CODE ANN. §152.204(a) (Vernon 2002).[2] Only when no "child custody proceeding" has been commenced in a court of another state having jurisdiction over the child and Texas has become the child's home state may a "child custody determination" of a court exercising emergency jurisdiction under §152.204(a) become final. *Id.* §152.204(b).[3]

*Application of Law*

The proceeding from which this appeal arose was commenced on October 4, 2004. On that date, the Texas Department of Family and Protective Services (DPS) filed a document entitled "Original Petition for Protection of a Child, For Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship." The fourth of October was

---

[2]Stating that: "[a] court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." TEX. FAM. CODE ANN. §152.204(a) (Vernon 2002).

[3]The statute reads:

If there is no previous child custody determination that is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 152.201 through 152.203, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 152.201 through 152.203. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 152.201 through 152.203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

TEX. FAM. CODE ANN. §152.204(b) (Vernon 2002).

3

also the date on which J.C.B.'s parents were arrested for possessing drugs while driving through Texas from Oklahoma. It is undisputed that neither J.C.B. nor his parents were residents of Texas at the time. Nor does anyone dispute that the child's home state was Oklahoma and that no Oklahoma court declined, in favor of Texas, to exercise its jurisdiction over J.C.B. Thus, it is clear that the trial court's jurisdiction to make a child custody determination could not be founded upon §152.201 of the Family Code. Yet, that is not true of §152.204.

With the arrest of his parents, J.C.B., who was approximately 16 months old, could not care for himself. Nor was there any friend or relative present and to whom the toddler could be released. So, while the arrest of his parents may not be deemed their abandonment of him in a technical sense, the child, no doubt, was faced with impending mistreatment or abuse if left alone. Thus, the trial court had temporary jurisdiction under §152.204(a) to intervene to secure his welfare. And, it did so by entering temporary orders on November 1, 2004, appointing the DPS his managing conservator.

Since November 1st, and despite the release of J.C.B.'s mother from jail and her assumption of residence in Texas, the toddler remained in the managing conservatorship of the DPS until trial in February of 2006. Having had managing conservatorship over J.C.B. for those 14 months, it could be said that J.C.B.'s home state has since become Texas.[4] Additionally, not only did counsel for Richard inform the trial court that he knew of

---

[4]Admittedly, the definition of "home state" contains a residency requirement for a particular period *before* suit is commenced. *See* TEX. FAM. CODE ANN.§152.102(7) (Vernon 2002) (defining the child's home state as the state in which the child lived with a parent or one acting as a parent for at least six months "immediately before the commencement of a child custody proceeding"). However, §152.204 permits a custody determination rendered via the emergency jurisdiction of a trial court to become final if, among other things, the child's home state becomes Texas once the order is entered. Considering the two together and affording each the authority implicit in their words, we cannot but conclude that the concept of "home state"

4

no other proceeding involving J.C.B. having been commenced elsewhere but also counsel for the DPS expressly represented that no such actions pended elsewhere. Given that these unsworn evidentiary comments by both counsel went uncontested, the trial court was entitled to rely on them as evidence establishing the subject of the utterances. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (recognizing that unsworn utterances of an attorney can be considered evidence if no one objects to them). So too do we note that actions to terminate parental rights fall within the scope of child custody determinations. *See White v. Blake*, 859 S.W.2d 551, 561-63 (Tex. App.–Tyler 1993, no writ) (so holding). And, in ordering the parental relationship to be terminated, the trial court implicitly directed that the subject of its order be final. Indeed, one cannot reasonably think of such an order as simply being temporary or a stop gap measure.

Taken together, the foregoing indicia serve to prove that the trial court had authority to act under §152.204(a). Having subject matter jurisdiction to act under that provision, we cannot but overrule Richard's contention. Thus, the trial court's order of termination is affirmed.

Brian Quinn
Chief Justice

---

differs when jurisdiction is invoked under §152.204(a) and omits the requirement that the six months of residence occur before the proceeding is commenced. If this were not so, then there could be no home state for purposes of finalizing orders rendered via emergency jurisdiction since the proceeding began before the child had resided with a parent or parent surrogate in Texas for six months. *See First American Title Ins. Co. v. Strayhorn,* 169 S.W.3d 298, 304 (Tex. App.–Austin 2005, pet. denied) (requiring us to interpret facially contradictory statutes in a way that upholds both).