

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-13-00203-CV

## IN THE INTEREST OF C.L.B., A CHILD

_____

### From the County Court at Law No 2
### Johnson County, Texas
### Trial Court No. D201100274

## MEMORANDUM  OPINION

Asserting twenty-five issues, Appellant K.L. appeals the trial court's termination of her parental rights to her son C.L.B. after a jury trial.  We will affirm.

**Background**:  C.L.B. was born in Indiana in July 2010 and lived there with Appellant, his mother, and Harry, his now-deceased father.  On September 18, 2011, when C.L.B. was approximately fifteen months old, Appellant and Harry signed a written authorization for Elizabeth and Bradley Borys to take temporary care of C.L.B. from September 18 to November 25, 2011 in Texas, where the Boryses resided.  Elizabeth is Harry's adult daughter and C.L.B.'s half-sister.  The Boryses had two children at that time and were expecting their third child.  Elizabeth has known

Appellant for several years and testified that Appellant also has a nine-year old daughter who has been living with Appellant's father in Indiana.

Elizabeth first met C.L.B. in Indiana when he was just about a month old. At that time, Elizabeth was concerned about C.L.B.'s well-being because Appellant, Harry, and C.L.B. were living in a dirty and cluttered residence, Harry was drinking (Elizabeth described him as a "heavy alcoholic"), and Appellant was not taking her medication for mental illness. Elizabeth was aware that Appellant and Harry had lived in four or five different residences with C.L.B. in Greencastle, Indiana. She saw C.L.B. again in Indiana around Christmas when he was about six months old. Elizabeth said that she was again concerned about C.L.B. because he had severe diaper rash, and her husband took Harry to the store to get medication for it.

Elizabeth did not contact Indiana CPS with her concerns about C.L.B. because she understood that he already had a caseworker. According to Elizabeth, Indiana CPS had been involved with C.L.B. since his birth because of Appellant's mental-health history, and there was an agreement that C.L.B. would not be left alone in Appellant's care. Elizabeth was aware that Indiana CPS had removed C.L.B. on two occasions, each for a week or less. Her understanding for C.L.B.'s removal was that Appellant had been found by the police in an incoherent state, and upon going to their residence, Harry was "deemed unfit" at the time.

The last place where C.L.B. lived with Appellant and Harry was in Donaldson, Indiana, in a house that the Boryses owned, and C.L.B. was there for less than a week. Elizabeth testified that in September of 2011, Harry had contacted her and said that they

were homeless with C.L.B. and needed help. The Boryses decided to allow Appellant and Harry to stay in their Donaldson house and rented them a U-Haul vehicle so they could get their belongings out of storage and take them from Greencastle to Donaldson. The Boryses had asked Appellant and Harry to pay them $200 a month to cover the utilities.

When Harry, Appellant, and C.L.B. arrived at the Boryses' Donaldson house, Elizabeth learned that Harry was intoxicated at that time, so the Boryses decided to go to Indiana. They also contacted CPS in Marshall County, Indiana, the county that Donaldson is located in. When the Boryses arrived in Donaldson, they found Harry to be drinking and Appellant to be incoherent at times. At that time, on September 18, Appellant and Harry signed the written authorization for the Boryses to temporarily care for C.L.B. until November 25. The Boryses agreed to care for C.L.B. because Harry was drinking and Appellant was not taking her medication. Elizabeth said that the purpose for their temporarily caring for C.L.B. in Texas was to give Appellant and Harry "the opportunity to get on their feet and get going in a better direction so that they would be able to care for [C.L.B.] on their own." According to Elizabeth, because Appellant and Harry were in agreement with the Boryses taking C.L.B., Indiana CPS in Marshall County closed the case.

The Boryses returned to Texas with C.L.B. and cared for him in their home in Texas. While she cared for C.L.B., Elizabeth had several concerns: C.L.B. would become scared if they left the room; he had trouble sleeping at night; he did not like physical contact; and he was malnourished and slightly lethargic.

Appellant and Harry stayed at the Boryses' Donaldson house until November 1. The Boryses asked Appellant and Harry to vacate the Boryses' house at that time because Harry had not gotten a job and Appellant was not getting treatment for her mental illness, and those were the Boryses' conditions for Appellant and Harry to live in their house. When the Boryses returned to Indiana with C.L.B. the week of Thanksgiving, Appellant and Harry had vacated the house, but they had left behind, among other items, a large number of empty liquor bottles, a lot of pornographic DVDs and magazines, important personal papers, and Appellant's medication.

The Boryses were returning C.L.B. that week in accordance with the written authorization and their agreement with Appellant and Harry. Upon getting to Indiana, the Boryses contacted Harry by telephone on Thanksgiving—he had a pre-paid cell phone, and he could only be reached if he put minutes on the phone. Harry would not tell Elizabeth where he and Appellant were, nor would he let Elizabeth talk to Appellant; he told Elizabeth that they were "heading south."

Because Appellant and Harry had not gotten in a better situation and were not to be found to return C.L.B. to them, the Boryses contacted the Marshall County CPS caseworker for advice on what to do with C.L.B. Elizabeth said that they were advised that, because Appellant and Harry had left Marshall County and had abandoned C.L.B. into the Boryses' care, the Boryses should return to Texas with C.L.B. and contact CPS in Texas.

The Boryses thus returned to Texas with C.L.B., and Elizabeth contacted Harry and told him that she was going to turn C.L.B. over to Texas CPS if Harry and

Appellant would not agree to relinquish their parental rights. Harry refused to do that and again refused to let Elizabeth talk to Appellant. Harry asked Elizabeth to agree to keep C.L.B. until Harry became able to come to Texas and get him, but the Boryses refused because there was no indication that Appellant and Harry's circumstances would change and because the situation had become too stressful for the Boryses.

On the Monday after Thanksgiving, Elizabeth contacted Texas CPS about C.L.B.'s situation. Holli Hutto was the Department investigator assigned to Elizabeth's referral. Hutto contacted Harry by phone after visiting with Elizabeth, and he told her that he did not have a place to live. Although Hutto understood that Appellant was with Harry, she was not able to speak to Appellant. Because the Boryses were no longer able to care for C.L.B. and because Appellant and Harry were not able to come to Texas to get him, the Department removed C.L.B. and filed suit for conservatorship on November 29, 2011.

During her two-week involvement with the case, Hutto was never able to speak to Appellant. Hutto learned from Appellant's grandparents that Appellant was in a psychiatric hospital. Hutto faxed some case documentation to a social worker at the psychiatric hospital, but she does not know if Appellant received it.

Lisa Peebles was the first Department caseworker and worked on C.L.B.'s case for seven months. She prepared a service plan for Appellant and Harry and eventually located them in the end of January 2012. Throughout her time on the case, Peebles had trouble locating and contacting Appellant and Harry because they were "very transient" and Appellant was often in various psychiatric hospitals. Peebles spoke with

Harry twice and, on the first call, explained the service plan to him.

Peebles spoke with Appellant only one time; on that occasion, Appellant was in an Indiana psychiatric hospital and was not coherent. Peebles attempted to discuss C.L.B. and the service plan with Appellant, but Peebles did not believe that Appellant was able to understand and thus did not provide any details. Peebles gave a nurse her contact information so that it could be given to Appellant, but Appellant never contacted Peebles. Peebles mailed the service plan by certified mail to Appellant's grandparents in Florida, and it was received there, but Peebles did not know if Appellant ever received it. Peebles said that because of Appellant's transient status and the inability to maintain contact with Appellant, she was never able to set up services for Appellant.

Peebles also investigated Appellant's relatives for possible placement of C.L.B., but Appellant's father was unable to care for C.L.B. and Appellant's grandparents were in their upper 80s and could not care for a toddler. During Peebles's work on the case, Appellant and Harry never contacted or visited C.L.B.

Peebles got transferred to a new position, so Blanca Garza became the next caseworker. In August of 2012, while attempting to contact Appellant, Garza learned that Appellant had been in a mental-health facility in Columbus, Georgia but was discharged on August 17. In October, Garza learned that Harry had drowned on September 4 in the Chattahoochee River in Columbus. Elizabeth said that, at that time, Harry and Appellant were living on the banks of that river, and Garza said that the police report on Harry's drowning stated that they were living in a tent on the banks of

the river.

Garza was first able to speak with Appellant in December of 2012 when Appellant was staying with her grandparents. Garza said that the phone call was very short because when she discussed that C.L.B. was in Texas, Appellant did not understand why C.L.B. was in Texas, became very upset and handed the phone to her father, and would not talk further with Garza. Thereafter, Appellant never contacted Garza.

Garza spoke with Appellant on April 15, 2013. At that time, Appellant was living in a group home, which Garza said would not be a safe environment for C.L.B. Garza was able to obtain some background information from Appellant about herself and Harry, but Appellant ended the call before Garza was finished because she "needed to heat up some noodles."

Garza called Appellant two weeks before trial to obtain important information about C.L.B., but Appellant quickly ended the call without providing any information because she "wanted to catch some sun." Elizabeth also said that Appellant was living in a group home and that she had spoken to her a few times recently. Appellant appeared more coherent to Elizabeth and they discussed Harry, but C.L.B. was not discussed until Elizabeth brought him up. From their discussion, Elizabeth understood that Appellant knew C.L.B. was in Texas.

Appellant did not appear at trial. Before trial began, the trial court telephoned Appellant in Indiana on the record and told her that the trial was going to proceed. Appellant stated that she "was not able to make it" but still wanted a jury trial. Her

appointed counsel was present and represented her in the trial.

**Jurisdiction.**  Appellant's first issue is that the trial court abused its discretion in finding that it had personal jurisdiction over her.  A little over five months after the case was filed, the trial court appointed counsel for Appellant on May 9, 2012.  Appellant was served by substituted service in Indiana on October 29, 2012, but the return was not properly executed.  Appellant filed a plea to the jurisdiction on December 21, 2012.  Citation was reissued, and Appellant was personally served in Indiana on January 14, 2013.  In her plea to the jurisdiction, Appellant asserted that the trial court did not have subject-matter jurisdiction because the trial court lacked personal jurisdiction over her.  The trial court denied the plea to the jurisdiction.

The Department asserts that the trial court had personal jurisdiction over Appellant because she failed to file a special appearance.  A parent's challenge to personal jurisdiction is properly raised in a special appearance under Rule 120a.  *In re S.A.V.,* 837 S.W.2d 80, 85 (Tex. 1992); TEX. R. CIV. P. 120a; *see, e.g., In re N.M.G.,* No. 07-12-00522-CV, 2013 WL 2642885 (Tex. App.—Amarillo June 10, 2013, no pet.) (mem. op.); *In re Marriage of Roman,* No. 10-06-00023-CV, 2007 WL 1378493 (Tex. App.—Waco May 9, 2007, no pet.) (mem. op.).  A special appearance must be made by sworn motion.  TEX. R. CIV. P. 120a(1).  Strict compliance with Rule 120a is required, and a trial court does not err in denying an unsworn special appearance.  *Siemens AG v. Houston Cas. Co.,* 127 S.W.3d 436, (Tex. App.—Dallas 2004, pet. dism'd).  Because Appellant's plea to the

jurisdiction was unsworn, the trial court did not err in denying it.[1]  Issue one is overruled.

Appellant's second, third, and fourth issues assert that the trial court abused its discretion in finding that it had personal jurisdiction over C.L.B., in finding that Texas was C.L.B.'s home state at the time the case was filed, and in exercising more than temporary emergency jurisdiction over C.L.B.  Appellant argues that, under the Uniform Child Custody Jurisdiction and Enforcement Act (the UCCJEA, chapter 152 of the Family Code), Indiana was C.L.B.'s home state and that, other than exercising temporary emergency jurisdiction over C.L.B. because he was present in Texas, the trial court lacked subject-matter jurisdiction and its termination order is thus void.

Construction of the UCCJEA's "home state" provision is a question of law that we review de novo.  *Powell v. Stover*, 165 S.W.3d 322, 324 (Tex. 2005); *see also In re Dean*, 393 S.W.3d 741 (Tex. 2013).  And whether a trial court has subject-matter jurisdiction

---

[1] The Department further asserts that because the trial court had status (in rem) jurisdiction over C.L.B.'s custody determination, personal jurisdiction over Appellant was not necessary.  *See S.A.V.*, 837 S.W.2d at 84; *N.M.G.*, 2013 WL 2642885, at *1 ("personal jurisdiction over the parent whose interest is being terminated is unnecessary").  Also, the Department notes that the Family Code authorizes the exercise of personal jurisdiction over a nonresident if the child resides in Texas "as a result of the acts or directives" of the nonresident, TEX. FAM. CODE ANN. § 102.011(b)(3) (West Supp. 2013), and that, if the Family Code's requirements are satisfied,

> the state's interest in determining custody has been demonstrated.  That is, the state has acquired a sovereign's interest in and responsibility for the child's welfare.  In such a situation, the state's interest in the child's welfare outweighs the nonresident parent's interest in avoiding the burden and inconvenience of defending the suit in Texas.  Therefore, due process does not require that a connection exist between the nonresident parent and this state.  In adjudications of custody, once these jurisdictional provisions have been satisfied, the court can properly exercise jurisdiction over the nonresident.  Satisfaction of these provisions confers "personal jurisdiction" over the nonresident as well as subject matter jurisdiction over the case.

*S.A.V.*, 837 S.W.2d at 84; *see also In re M.G.M.*, 163 S.W.3d 191, 197 (Tex. App.—Beaumont 2005, no pet.) ("'States have a *parens patriae* duty to children within their borders… '").

under the UCCJEA to terminate parental rights is a question of law. *See In re F.M.-T,* No. 02-13-00230-CV, 2013 WL 5517915, at *2 (Tex. App.—Fort Worth Oct. 3, 2013, no pet.) (mem. op.); *In re J.C.B.,* 209 S.W.3d 821, 822 (Tex. App.—Amarillo 2006, no pet.).

In denying Appellant's plea to the jurisdiction, the trial court made findings of fact and concluded that Texas was the home state of C.L.B. None of the jurisdictional facts in this case are in dispute. The trial court found that C.L.B. was born in Indiana and that he was brought to Texas by the Boryses. It is not in dispute that the Boryses brought C.L.B. to Texas at the request and with the authorization of Appellant and Harry and that two months later, after being unable to locate Appellant and Harry in Indiana to return C.L.B. to them, the Boryses returned to Texas with C.L.B. with at least Harry's knowledge (Elizabeth testified that when they returned to Texas with C.L.B., Harry would not let her talk to Appellant). The trial court also found that Appellant and Harry had not been to Texas before or after the case was filed, and it is undisputed that they were living in Indiana when the case was filed.

Subsection 152.201(a) sets forth the instances in which a Texas court has jurisdiction to make an initial child custody determination. "In short, if the child has a home state, if it is one other than Texas, and if the courts of that state have not declined to exercise their jurisdiction, then the courts of Texas lack jurisdiction over the child."[2] *J.C.B.,* 209 S.W.3d at 823; *see* TEX. FAM. CODE ANN. § 152.201(a) (West 2008). But section 152.204 is an exception to subsection 152.201(a). *See id.* § 152.201(a) ("Except as

---

[2] "Home state" is defined as the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. TEX. FAM. CODE ANN. § 152.102(7) (West 2008).

otherwise provided in Section 152.204, a court of this state has jurisdiction to make an initial child custody determination only if"); *J.C.B.,* 209 S.W.3d at 823.

Appellant concedes on appeal that the trial court had temporary emergency jurisdiction over C.L.B. under section 152.204(a). *See* TEX. FAM. CODE ANN. § 152.204(a) (West 2008) (Texas court has temporary emergency jurisdiction if child is present in Texas and has been abandoned). It is also not in dispute that, when this case was filed and while it was pending, there was no previous child-custody determination entitled to be enforced in Indiana and no child custody proceeding had been commenced in Indiana.[3] *See id.* § 152.204(b). Thus, the Department correctly points out that subsection 152.204(b) applies, rather than subsection 152.204(c), which Appellant relies on.[4] *See J.C.B.,* 209 S.W.3d at 823 & n.3.

---

[3] The trial court appeared to make such a finding of fact when it found: "At the time this case was filed there were no court ordered relationships as concern the child, [C.L.B.]."

[4] Section 152.204 provides:

> (a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

> (b) If there is *no* previous child custody determination that is entitled to be enforced under this chapter and a child custody proceeding has *not* been commenced in a court of a state having jurisdiction under Sections 152.201 through 152.203, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 152.201 through 152.203. *If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 152.201 through 152.203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.*

> (c) If there is a previous child custody determination that is entitled to be enforced under this chapter, or a child custody proceeding has been commenced in a court of a state having jurisdiction under Sections 152.201 through 152.203, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having

At least two other courts have addressed this situation, with both noting that the trial court had temporary emergency jurisdiction to enter temporary orders for protection and conservatorship. *See F.M.-T,* 2013 WL 5517915, at *3; *J.C.B.,* 209 S.W.3d at 824. Thereafter, with no other child custody proceeding being commenced in another state, those courts held that, after six months, Texas became the children's home state and the trial court then had subject-matter jurisdiction over the termination portion of the Department's petition. *See F.M.-T,* 2013 WL 5517915, at *3-4; *J.C.B.,* 209 S.W.3d at 824 & n.4.

Likewise, at the time of the hearing on Appellant's plea to the jurisdiction, C.L.B. had been in the Department's conservatorship for over a year and had been living in Texas with the Boryses and then in foster care for a total of sixteen months. At that time and at the time of trial, C.L.B.'s home state was Texas. *See F.M.-T,* 2013 WL 5517915, at *3; *J.C.B.,* 209 S.W.3d at 824. Accordingly, the trial court had subject-matter jurisdiction to proceed over the termination of Appellant's parental rights. *See F.M.-T,* 2013 WL 5517915, at *3; *J.C.B.,* 209 S.W.3d at 824. We thus overrule issues two, three and four.

jurisdiction under Sections 152.201 through 152.203. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

(d) A court of this state which has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in or a child custody determination has been made by a court of a state having jurisdiction under Sections 152.201 through 152.203, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to Sections 152.201 through 152.203, upon being informed that a child custody proceeding has been commenced in or a child custody determination has been made by a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.

TEX. FAM. CODE ANN. § 152.204 (West 2008) (emphases added).

**Extension:** In issue five, Appellant makes multiple complaints about the trial court's grant of an extension of the dismissal date. *See* TEX. FAM. CODE ANN. § 263.401 (West 2008). The trial court's September 4, 2012 permanency hearing order noted the one-year dismissal date of December 3, 2012 and set the case for trial on that date. On December 3, the parties appeared in court. Appellant's attorney first advised the trial court that Appellant was not present and that he had not been able to locate and contact Appellant, and Harry's attorney then advised the trial court of Harry's recent death and that he had filed a suggestion of death that day.

Next, the Department's attorney informed the trial court that C.L.B.'s attorney ad litem had recently informed him that the officer's return of service for the citation that was served on Appellant by substituted service was not notarized and was thus inadequate. Therefore, the Department requested a 180-day extension of the case so that Appellant could be served again.

Appellant's attorney objected to the extension, and testimony was elicited from Garza about the Department's effort to contact Appellant's grandparents and to serve Appellant and about the difficulty in locating and serving Appellant because she was homeless. Garza also testified that, because she did not know where Appellant was, it would not be possible to return C.L.B. to her and that if she did, it would be contrary to C.L.B.'s welfare and best interest and would necessitate a CPS case in another state for C.L.B. Garza further said that C.L.B.'s current placement was meeting his needs.

Appellant's attorney then specifically objected to the extension on the ground that the Department had been dilatory in serving Appellant and asked the trial court to

deny the requested extension. The trial court overruled the objection and made an oral finding that the Department had used due diligence in attempting to serve Appellant. The trial court also took judicial notice of the prior testimony and the pleadings pertaining to the attempts to locate Appellant and noted that there was information that Appellant was homeless and had been in Indiana, Georgia, and possibly Florida, which made service on her "difficult." The trial court further made an oral finding that C.L.B.'s current placement was in his best interest at the time. Finally, the trial court orally found that there was "sufficient need" to extend the case for 180 days.

On December 4, the trial court signed an order retaining the suit; the order found that "extraordinary circumstances necessitate the child remaining" in the Department's temporary managing conservatorship and that continuing the Department's appointment as temporary managing conservator was in the child's best interest. The December 4 order set a new dismissal date of May 31, 2013 and set the next permanency hearing. The trial court's April 16, 2013 order set the case for trial on May 17, but after Appellant demanded a jury trial, the case was reset for trial on May 29, when trial commenced.

Section 263.401 provides in pertinent part:

> (a) Unless the court has commenced the trial on the merits or granted an extension under Subsection (b), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court shall dismiss the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child.

> (b) Unless the court has commenced the trial on the merits, the

court may not retain the suit on the court's docket after the time described by Subsection (a) unless the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child. If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a). If the court retains the suit on the court's docket, the court shall render an order in which the court:

> (1) schedules the new date on which the suit will be dismissed if the trial on the merits has not commenced, which date must be not later than the 180th day after the time described by Subsection (a);
> (2) makes further temporary orders for the safety and welfare of the child as necessary to avoid further delay in resolving the suit; and
> (3) sets the trial on the merits on a date not later than the date specified under Subdivision (1).

TEX. FAM. CODE ANN. § 263.401(a, b).

Appellant first argues that the trial court abused its discretion in extending the dismissal date because the trial court did not find any extraordinary circumstances for the extension or set them forth. We review a trial court's ruling on an extension request under section 263.401(b) for an abuse of discretion. *In re D.M.,* 244 S.W.3d 397, 416 (Tex. App.—Waco 2007, no pet.) (op. on reh'g).

The trial court's December 4, 2012 order found that extraordinary circumstances existed. Section 263.401 does not require that the trial court make more explicit findings or explain the extraordinary circumstances. *In re T.R.F.,* No. 10-07-00086-CV, 2007 WL 2325818, at *1 (Tex. App.—Waco Aug. 17, 2007, no pet.) (mem. op.); *see also In re J.G.K.,* No. 02-10-00188-CV, 2011 WL 2518800, at *35 (Tex. App.—Fort Worth June 23, 2011, no pet.) (mem. op.). Moreover, the trial court made an oral finding that there was "sufficient need" to extend the case after noting that locating and serving Appellant had

been difficult for the Department because of her homelessness and transience. We cannot say that the trial court abused its discretion.

Next, Appellant complains that the trial court's December 4 order was signed after the December 3 dismissal date, "after it lost jurisdiction over Appellant and C.L.B." But the dismissal date in section 263.401 is procedural, not jurisdictional, and the trial court did not lose jurisdiction. *In re Dep't of Fam. & Prot. Servs.*, 273 S.W.3d 637, 642 (Tex. 2009). Moreover, the statute does not require that the order be entered before the expiration of one year, and in any event, at the December 3 hearing, the trial court orally granted the extension. *See J.G.K.*, 2011 WL 2518800, at *35 (section 263.401(b) does not require written extension order and oral rendition is sufficient). Again, we cannot say that the trial court abused its discretion. For all the above reasons, we overrule issue five.

Issue six asserts that the trial court denied Appellant her due-process rights under the U.S. and Texas Constitutions by granting an extension of the dismissal date. This complaint was not made in the trial court at the December 3 hearing, so it is not preserved for appellate review and is thus overruled. TEX. R. APP. P. 33.1(a); *see In re M.A.-O.R.*, No. 02-11-00499-CV, 2013 WL 530952, at *3 n.10 (Tex. App.—Fort Worth Feb. 14, 2013, no pet.) (mem. op.) ("due process contentions in termination cases must be preserved in the trial court to be raised on appeal"); *Brewer v. Simental,* 268 S.W.3d 763, 767 (Tex. App.—Waco 2008, no pet.) ("Constitutional violations must be raised in the trial court for them to be preserved for appellate review.").

Issue nine complains that the trial court erred and abused its discretion in

denying Appellant's motion to dismiss that was made during trial at the conclusion of the evidence. The basis for the motion to dismiss was the Department's alleged failure to use diligence in serving Appellant. Appellant's counsel referred to his earlier objection to the extension at the time of the extension hearing and argued that, based on additional trial testimony, the case should be dismissed because of the Department's lack of diligence. The trial court denied the motion to dismiss.

To the extent that the motion to dismiss was made under subchapter E of chapter 263, it was plainly untimely under subsection 263.402(b), which provides: "A party to a suit under this chapter who fails to make a timely motion to dismiss the suit under this subchapter waives the right to object to the court's failure to dismiss the suit. A motion to dismiss under this subsection is timely if the motion is made before the trial on the merits commences." TEX. FAM. CODE ANN. § 263.402(b) (West 2008). The trial court thus did not abuse its discretion in denying the motion to dismiss.[5] Issue nine is overruled.

**Service plan:** In issues seven and eight, Appellant asserts that her due-process rights under the U.S. and Texas Constitutions were denied because of the Department's failures to serve her with a copy of the family service plan and to discuss its requirements with her.[6] Because these complaints were either not timely made or made

---

[5] To the extent that Appellant's motion to dismiss was not made under subchapter E of chapter 263, Appellant cites no authority in support of her argument that a termination case is subject to dismissal because of the Department's alleged failure to use diligence in serving a parent.

[6] The Department did not seek termination on the ground that Appellant failed to comply with the court-ordered service plan. *See* TEX. FAM. CODE ANN. § 161.001(1)(O) (West Supp. 2013).

at all in the trial court, they are not preserved for appellate review and are overruled.[7]
TEX. R. APP. P. 33.1(a); *see M.A.-O.R.*, 2013 WL 530952, at *3 n.10.

**Failure to Admonish:** Issue ten complains that the trial court erred and abused its discretion in failing to admonish Appellant of her rights and that her parental rights were subject to limitation or termination. Because Appellant did not timely raise this complaint in the trial court, it is not preserved for appellate review and is thus overruled. TEX. R. APP. P. 33.1(a); *see M.A.-O.R.*, 2013 WL 530952, at *3 n.10.

**Sufficiency of the Evidence:** In issues eleven through twenty-two, Appellant challenges the legal and factual sufficiency of the evidence to support the five grounds for termination and the best-interest finding.

In a proceeding to terminate the parent-child relationship brought under section 161.001, the Department must establish by clear and convincing evidence two elements: (1) one or more acts or omissions enumerated under subsection (1) of section 161.001, termed a predicate violation; *and* (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(1), (2) (West Supp. 2013); *Swate v. Swate*, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied). The factfinder must find that both elements are established by clear and convincing evidence, and proof of one element does not relieve the petitioner of the burden of proving the other. *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976); *Swate*, 72 S.W.3d at 766. If multiple predicate violations under section 161.001(1) were found in the trial court, we will affirm based on any one ground

---

[7] The complaint that the Department's failure to serve Appellant with the service plan denied Appellant due process was made for the first time in a postjudgment motion to modify, reform, or correct judgment, which was thus not timely. No due-process complaint was made at all about the Department's failure to discuss the service plan's requirements with Appellant.

because only one predicate violation under section 161.001(1) is necessary to a termination judgment. *In re T.N.F.,* 205 S.W.3d 625, 629 (Tex. App.—Waco 2006, pet. denied), *overruled in part on other grounds by In re A.M.,* 385 S.W.3d 74, 79 (Tex. App.—Waco 2012, pet. denied).

The standards of review for legal and factual sufficiency in termination cases are well established. *In re J.F.C.,* 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). In reviewing the legal sufficiency, we view all the evidence in the light most favorable to the finding to determine whether a trier of fact could reasonably have formed a firm belief or conviction about the truth of the Department's allegations. *In re J.L.,* 163 S.W.3d 79, 84-85 (Tex. 2005); *J.F.C.,* 96 S.W.3d at 265-66. We do not, however, disregard undisputed evidence that does not support the finding. *J.F.C.,* 96 S.W.3d at 266. In reviewing the factual sufficiency of the evidence, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* We must consider the disputed evidence and determine whether a reasonable factfinder could have resolved that evidence in favor of the finding. *Id.* If the disputed evidence is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id.*

The trial court ordered termination of Appellant's parental rights based on the jury's findings that Appellant: (1) voluntarily left the child alone or in the possession of another not the parent without expressing an intent to return, without providing for the adequate support of the child, and remained away for a period of at least three months

(TEX. FAM. CODE ANN. § 161.001(1)(B)); (2) voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months (*id.* § 161.001(1)(C)); (3) knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endanger the physical or emotional well-being of the child (*id.* § 161.001(1)(D)); (4) engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being (*id.* § 161.001(1)(E)); and (5) constructively abandoned the child (*id.* § 161.001(1)(N)). The jury also found that termination was in C.L.B.'s best interest.

In issues twelve and seventeen, Appellant argues, respectively, that the evidence is legally and factually insufficient to support termination on the ground that Appellant voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months, as provided for by subsection 161.001(1)(C).

Appellant's sufficiency complaint focuses solely on the element of adequate support; she does not dispute that she voluntarily left C.L.B. in the possession of another and remained away for a period of at least six months. Appellant argues that the trial court did not order her to pay child support and that the Department never requested support. But under subsection 161.001(1)(C), while the parent is not required to "personally support" the child, an abandoning parent does not provide adequate support if she does not "make arrangements" for the child's adequate support. *See In re T.L.S.*, No. 01-12-00434-CV, 2012 WL 6213515, at *5 (Tex. App.—Houston [1st Dist.] Dec.

13, 2012, no pet.) (mem. op.) (citing *Holick v. Smith,* 685 S.W.2d 18, 21 (Tex. 1985)).

Appellant also argues that she made arrangements for C.L.B.'s support by entering into the agreement with the Boryses for them to care for C.L.B. The agreement, however, was for only for two months, and thereafter, once Appellant was notified that C.L.B. was in foster care, the caseworkers testified that Appellant did not make any support payments and did not provide any diapers, food, or other necessities. Appellant never made arrangements for C.L.B's support; she never contacted the Department or C.L.B. at all, much less to make arrangements for his support.

Finally, Appellant asserts that there was no evidence that she had the means to pay any support,[8] but proving a parent's ability to pay support is only required for termination under subsection 161.001(1)(F), which was not a ground for termination in this case. *See* TEX. FAM. CODE ANN. § 161.001(1)(F) ("failed to support the child in accordance with the parent's ability"); *In re D.S.W.,* No. 10-10-00108-CV, 2010 WL 5419014, at *1 (Tex. App.—Waco Dec. 29, 2010, no pet.) (mem. op.).

For these reasons, the evidence is legally and factually sufficient to support the jury's finding that Appellant failed to provide adequate support. We overrule issues twelve and seventeen. We thus need not address issues eleven, thirteen through sixteen, and eighteen through twenty, which complain of the legal and factual insufficiency of the evidence to support termination under the other four grounds.

Issues twenty-one and twenty-two complain that the evidence is legally and

---

[8] Elizabeth testified that, in 2011, Appellant was receiving a monthly social security disability check in the amount of $376.60 for her mental illness and a monthly SSI (supplemental security income) check for C.L.B. in the amount of $87.

factually insufficient to support the jury's best-interest finding. In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.*

The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't Prot. & Reg. Serv's.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). The goal of establishing a stable permanent home for a child is a compelling state interest. *Id.* at 87. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In re S.H.A.*, 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc).

Evidence of past misconduct or neglect can be used to measure a parent's future conduct. *See Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue."); *see also In re V.A.*, No. 13-06-00237-CV, 2007 WL 293023, at *5-6 (Tex. App.—Corpus Christi 2007, no pet.) (mem. op.) (considering parent's past history of unstable housing, unstable employment, unstable relationships). Evidence of a parent's

home and job instability can show a lack of parental abilities.  *Doe v. Brazoria Cty. Child Prot. Servs.*, 226 S.W.3d 563, 574 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Evidence of a recent improvement does not absolve a parent of a history of irresponsible choices.  *In re T.C.*, No. 10-10-00207-CV, 2010 WL 4983512, at *8 (Tex. App.—Waco Dec. 1, 2010, pet. denied) (mem. op.); *Smith v. Tex. Dep't Prot. & Reg. Servs.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.).

C.L.B. was too young to express his desires.  He has no health or educational issues, and his needs are being met in his foster home, where he has been for over a year (fifteen months as of the time of trial.  His foster parents want C.L.B. to permanently remain with them, and the Department's goal is for C.L.B.'s adoption by the foster parents.  Elizabeth, Garza, and the CASA volunteer all testified that termination of Appellant's parental rights was in C.L.B.'s best interest.

Elizabeth testified that Appellant's older daughter was living with and being raised by Appellant's father.  Because of Appellant's mental illness, Indiana CPS had monitored C.L.B. since his birth.  C.L.B. had been removed from Appellant's care by Indiana CPS two times, and Elizabeth found C.L.B. to have severe and untreated diaper rash on one occasion.  When Elizabeth cared for C.L.B., she had several concerns about him:  he would become scared if they left the room; he had trouble sleeping at night; he did not like physical contact; and he was malnourished and slightly lethargic.

In addition to moving four or five times while she had C.L.B., Appellant was subsequently homeless and transient for much of the time that this case was pending. She was hospitalized several times for mental illness, and she had a history of not

taking her medication. At the time of trial, Appellant appeared to Elizabeth to be more coherent, and she was living in a group home, which Garza said would not be a safe environment for C.L.B. Appellant told Elizabeth that she did not have a bed in the group home and that she slept on the floor.

Considering all the evidence in relation to the *Holley* factors in the light most favorable to the jury's finding, we hold that a reasonable factfinder could have formed a firm belief or conviction that termination was in the child's best interest. For Appellant's factual sufficiency complaint on best interest, after considering all of the evidence, we hold that a reasonable factfinder could have formed a firm belief or conviction that termination was in the child's best interest. The evidence is legally and factually sufficient to support the jury's best-interest finding. We overrule issues twenty-one and twenty-two.

Issue twenty-four asserts that the trial court erred in denying her motion for new trial. In her motion for new trial, Appellant asserted that the evidence was legally and factually insufficient on the predicate grounds for termination and on best interest. Because we have found the evidence to be legally and factually sufficient on at least one predicate ground for termination and on best interest, the trial court did not err in denying the motion for new trial. We overrule issue twenty-four.

Issue twenty-five asserts that the trial court erred in denying her motion for directed verdict. We review a trial court's ruling on a motion for directed verdict just as we do a claim that the evidence is legally insufficient. *C.B. v. Tex. Dept. of Fam. & Prot. Servs.*, ___ S.W.3d ___, ___, 2013 WL 3064405, at *9 (Tex. App.—El Paso June 19, 2013, no

pet.) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005)). Because we have found the evidence to be legally sufficient on at least one predicate ground for termination and on best interest, the trial court did not err in denying the motion for directed verdict. We overrule issue twenty-five.

**Permanent Managing Conservator:** Finally, in issue twenty-three, Appellant asserts that the trial court abused its discretion in appointing the Department as C.L.B.'s permanent managing conservator and in failing to appoint Appellant as permanent managing conservator.

> In cases where a trial court's termination of the parent-child relationship is reversed, a parent is required to independently challenge a trial court's finding under section 153.131(a) to obtain reversal of the conservatorship appointment. *See In re J.A.J.,* 243 S.W.3d 611, 616-17 (Tex. 2007); *In re A.S.,* 261 S.W.3d 76, 92 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). In this case, however, we have overruled appellant's challenge to the termination, and the trial court's appointment of the Department as sole managing conservator may be considered a "consequence of the termination pursuant to Family Code section 161.207." *In re A.S.,* 261 S.W.3d at 92. Section 161.207, entitled "Appointment of Managing Conservator on Termination," provides: "If the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the Department of Protective and Regulatory Services, a licensed child-placing agency, or an authorized agency as a managing conservator of the child." TEX. FAMILY CODE ANN. § 161.207(a) (West 2008). Appellant provides no authority for the proposition that she is a "suitable, competent adult" as contemplated by section 161.207(a) or that the presumption in section 153.131(a) applies to a parent whose parental rights have been terminated under Chapter 161. *See In re A.W.B.,* No. 14-11-00926-CV, 2012 WL 1048640, at *7 ((Tex. App.—Houston [14th Dist.] Mar. 27, 2012, no pet.) (mem.op.). Rather, when a trial court terminates the parent-child relationship, the court also "divests the parent and the child of all legal rights and duties with respect to each other." TEX. FAM. CODE ANN. § 161.206 (West 2008); *A.W.B.,* 2012 WL 1048640, at *7. Accordingly, appellant's challenge to the trial court's appointment of the

Department as sole managing conservator, rather than appellant, is without merit.

*In re J.R.W.,* No. 14-12-00850-CV, 2013 WL 507325, at *12 (Tex. App.—Houston [14th Dist.] Feb. 12, 2013, pet. denied) (mem op.).

For the same reason, we hold that Appellant's complaint that the trial court abused its discretion in appointing the Department as sole managing conservator, rather than Appellant, is without merit.  Issue twenty-three is overruled.

We affirm the trial court's order of termination.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed February 20, 2014
[CV06]